Thank you, Your Honor. Good morning, and may it please the Court. My name is Sarah Saint. I'm with the Brooks Pierce Law Firm in Greensboro, North Carolina, arguing on behalf of the appellants in this matter. I appreciate the Court's opportunity to be here. I want to start my argument where all parties agree. The appellants here in this case are public officials. The four appellants were all school officials at the time of the events in question. The teacher, Ms. Johnson, who's alleged to have actually harmed the student, is not an appellant. She is still a defendant in this case. So is her employer, the Board of Education. They are still a defendant in this case. She pled guilty to something, right? Your Honor, she did. She pled guilty to a misdemeanor assault. So it's not alleged anymore that she harmed the student? I suppose that's right, Your Honor. She pled guilty in 2019. I want to start my argument where the parties are coming to the podium not on equal footing. There is a presumption of immunity even at the pleading stage that a public officer takes their duties and performs them in good faith. There is a presumption here. North Carolina courts call this a cloak of offense. They call it a shield that the plaintiffs must pierce. As the Fourth Circuit stated in 2018, every reasonable intendment will be made in support of this presumption. It places a heavy burden on the plaintiffs and the most exacting standard that these appellants could be held personally liable. The reason to pierce public official immunity must be alleged and proved. Alleged even at the pleading stage, and that is a high burden on plaintiffs. And because we're in federal court, we also have a plausibility standard here. The reason to pierce must be plausibly alleged sufficient to overcome the heavy burden, not speculation, not conclusory. And that's what North Carolina courts say, the much lower pleading standard. So maybe you were clearing the table at the beginning, and maybe you can clear it because the district court seemed to think that because the defendants assertedly were engaged in ministerial duties, they were not public officials. So maybe you could speak to that for a moment. Yes, your honor. The district court found not that the public officials weren't public officials. They found that the actions were ministerial, and they applied South Carolina law in doing so. We're in North Carolina, and North Carolina must be applied. And well settled, North Carolina says that a public officer cannot be held liable for a breach of a ministerial statutory duty unless the statute expressly provides for that liability. The statute here does not expressly provide for that liability. So the court can decide a very narrow issue today that even if the actions here were ministerial applying North Carolina law, they would still be immune for those actions. The court does not need to reach the question of whether they were ministerial or discretionary. But if the court were to reach that question, these actions were involved by the school officials, require them to use reason and judgment and their experience not only as school administrators, but also interpreting statutes. This requires legal analysis, and that is discretionary, your honors. The reporting statute does not say if someone complains about a teacher called DSS. The statute says if there is cause to suspect child abuse by a parent, guardian, custodian, or caretaker, then call DSS. It's an important distinction here between making the decision and executing on an already made decision. The making the decision is clearly discretionary here, and that doesn't matter if you apply North Carolina or South Carolina law. And then the third way that the court should look at this question, the court should court did find that there was no malice here, that public officials can be negligent. Public officials can even be recklessly indifferent. They cannot be malicious, and there are simply no factual allegations here that any of the four appellants here today. Why do you say that if there is malice, the immunity would no longer attach? Is that correct in your view? Yes, your honor. If there's allegations, factual allegations, that the four appellants here were malicious. Right, if they're plausible allegations that the appellants here were malicious, that would strip them of immunity, okay? Yes, your honor, that is correct. Now, the follow-up question I have is, based on the record before us, do we have enough to know that these actions were not malicious? Your honor, as I stated earlier, the presumption follows the public officials even at the pleading stage. The allegations- I don't dispute that. I'm just saying, let's just suppose an argument that the defendants knew. I don't know what they didn't know. Let's suppose that they knew that this kind of abuse was going on and that this individual, Ms. Johnson or whoever it is, had a record of mistreating autistic children and indeed all children. If they knew it and didn't stop it and continued to let her teach there and moved her from one classroom assignment to another, would that qualify as malice if they knew that autistic children were being stuffed into trash cans and if the school district did nothing about it? I think your honor hit on an important question. The plaintiffs don't allege what the appellants knew and they're required to. To get over the strong presumption, they're required to allege what it is that wasn't it. What they think was the intent to harm and that is crucial here, your honor, is that there must be intention that their actions be prejudicial or injurious to this student and there are no allegations there. The hypothetical question, the court does not need to reach that question because that has not been pled by plaintiffs and we have the complaint as it was pled here. But the important question here is looking at what was actually pled. So you're saying that no matter what they knew and no matter how horrendous the acts were, that there could be no malice as a matter of law? No, your honor, that's not what I'm saying. I think there may be at some point a threshold that the plaintiffs might have alleged. Why doesn't this reach that threshold? Because all that the school officials are alleged to have known is that one person upon information and belief saw something that we're not sure what and upon information and belief reported that to the principal who on upon information and belief reported that to the other three school officials. That's all we're alleged to have met. So even if somewhere up here there is that threshold of well now this knowledge becomes malice, we haven't come anywhere close to that threshold. The court doesn't need to reach what that threshold may be. These allegations don't reach that threshold. So looking at, again, let me ask this, do we know exactly what they knew? This was this case was resolved at the denying a motion to dismiss and whatever. Would it help to have the record developed a little bit? Maybe we could find out something more about that. More concrete about what the defendants actually knew and what they didn't know. In other words, do we know enough about this case? Just to dismiss it on the basis of immunity based on this record. Public official immunity is an immunity from suit, not only an immunity from liability. It is from going through the rigors of discovery. The plaintiffs must first allege that there is malice here, that there is intent to harm. Plaintiffs have not alleged that so they don't get to go pursue. They amended their complaint once already, right? So they had an opportunity perhaps to make those allegations that would have been sufficient. That's right, Your Honor. They amended their complaint and they've had our motion to dismiss for over a year at this point. If there are factual allegations to be alleged that would get closer to the line that Judge Wilkinson is reaching for, they had the opportunity to do that and have not even made that motion yet. If there were facts there, they would have pledged them. And because this is an immunity from suit, not just liability, and because of the presumption, they have to allege facts to pierce. They have to allege malice. They have to allege intent. And North Carolina courts routinely dismiss on 12b6 where plaintiffs have failed to allege the malice element. In this case, at best, the plaintiffs have alleged negligence. They have not alleged malice here. They use abuse as if it's a silver bullet trying to pierce public official immunity without saying what was reported to whom and when. And the difference between malice and negligence is that negligence asks what should have been done, where malice looks at what was actually done, was actually pled, and asks whether those actions were intended to harm. They must be a deliberate, purposeful attack on the student. Plaintiffs argue what they think the school officials should have done, but they don't cross the line of alleging intent to harm. What they should have done is negligence and does not pierce the shield. Are you arguing that anyone in a supervisory capacity is absolutely entitled to the immunity because it is very, very difficult to prove that somebody in a supervisory capacity, as the remaining defendants are, would act with intent to harm? I mean, you can see that the teacher himself or herself could act with intent to harm by putting the child in the trash can. But are you saying it becomes much more difficult to allege that supervisors intended to harm simply by virtue of their knowledge? So that you can be a supervisor and you can recognize that the teacher intended to harm, but if you do nothing about it, then you don't intend to harm because you weren't the person on the scene. Is that your position that supervisory officials, because they are one step removed, can never be accused or can never be, can never pierce the immunity because they didn't actually themselves intend to harm? No, your honor. I'm not saying that at all. I think as you pointed out earlier, there is a threshold somewhere up here where there may be a cross from negligence or reckless indifference into malice, into an intent to harm, even by a supervisor. We're nowhere close to that threshold. The plaintiffs in their brief argued that appellants seek immunity from their negligence. That's true. We are seeking immunity from negligence here, that is what North Carolina public official immunity is for. Plaintiffs say that the appellants didn't act reasonably. They didn't act like a reasonable... On the point about malice, what about paragraph 100 in the complaint, the allegation that when all this came to light, that the IEP team, in essence, punished the student saying that he was no longer allowed to attend school due to his maladaptive behaviors, which of course were the result of the abuse by this teacher. What about that allegation that it sounds like the student was being punished for his response to what this teacher had done to him? Your honor, there are no allegations that any of the appellants were involved in that decision. In fact, the appellants wouldn't be a part of a student's IEP team. They weren't a part of that decision and we're looking at personal liability. There's no respondent superior here. It is the personal liability of these appellants and there is not intent to harm the student here. The only claims that remain here are... There's not an allegation of it. I'm sorry, your honor? There's not an allegation of it. No allegations of it, right. There may have been, we don't know because there's not an allegation of it. We take the complaint at its face value of what those allegations are. The only claims that remain here are negligence claims. A negligence claim and a negligent inflection emotional distress claim. And for negligence claims, public officials are absolutely immune unless there's an affirmative pleading of more than negligence, which is simply isn't the case here. And similar allegations failed in North Carolina, which again has a lower pleading standard. I'll give the example of the Webb case out of 2006, where a high school principal was alleged to have pulled a student through a window and pushed them up against a wall. He was the actor, the abuser in that situation. And the court determined that that was discretionary. There was no pallet, no malice. The principal was dismissed on public official immunity on a 12c motion. The public officials here don't come anywhere close to doing what the principal did in that case. And the principal there was found to have public official immunity in North Carolina courts. Should the court decide that they would like to reach the question of was this discretionary or was this ministerial, which again, I don't believe the court needs to because even if it was ministerial, there is no express provision for liability here. But if the court were to look at whether these were ministerial or discretionary, these are clearly discretionary. They involve the exercise of decision making, judgment of their experience as school officials, as school administrators. And they, school officials exercise discretion like this, what to do in the face of complaints every day in determining what to do. They make these decisions through exercising the not rote tasks like wielding a shovel, closing a window. These are their jobs. They're the reasons they're public officials to begin with. And so when someone comes to them with an issue about a teacher, they must use their knowledge of experience and their knowledge of the law to determine whether or not this is a thing that needs to be reported to the Department of Social Services. And now as we outlined in our brief, there's no purporting obligation here. When acting 7b, the legislature was focused on abuse by parents and by other folks in residential settings that take care of children there, not about other people, strangers, teachers, church workers. Thank you very much, counsel. If either of my colleagues has further questions of you, I'm happy to wait. But otherwise, we'll look forward to hearing from Ms. Hagan. Thank you, your honor. Thank you. Good morning, your honors. And may it please the court. My name is Stacy Hagan. I'm here with my colleague, Elizabeth Wharton, on behalf of the athletes are a and her son, G. A. Your honors, the district court was correct. appellants are not entitled to public official immunity, based on the facts alleged in the amended complaint. Those facts, which we know, even without the benefit of discovery. So, so I do want to hear that. And but but I have this lurking thing in my mind about the basis for the district court opinion. So it seemed to me that the district court didn't misunderstood what what the status of these people are. Do you agree with that? No, your honor, I don't. I believe that the district court found that even public officials, I know you think that because public officials are doing some kind of duties that they cease being public officials. Is that what you said? No, your honor, I don't contend that they cease being public officials, but we contend that they cease how they're not exercising discretion and the immunity is afforded to public officials when they are exercising discretion. And importantly, when they are acting in a way that upholds the statute, a that they are supposed and the authority that's vested in them by the legislature. So can they not be? How can they not be exercising discretion? Because these in these situations arise in every school situation by the dozens where where parents and and others are concerned about the children, the treatment that their children are being accorded in in class. And this arises in special education classes as well as in other classrooms. And and so these are a hard decision as to whether to terminate someone to have counseling or go through progressive discipline or um, have them reassigned their, you know, their their dozens of options that school officials face in these kind of situations. And the situations arise with, you know, quite not infrequently. And so how can this be anything other than discretionary to which the immunity would attach? So your honor, I would answer that question to had these appellants done any of the things that you just described that you would wrestle with in this type of situation, that would be discretionary and there would be immunity. Right. But the facts are that they did nothing. They didn't investigate. They didn't take any actions. They didn't remove her from the classroom. They didn't report her to the state board even after she pleaded guilty to two counts of assault on a handicapped person. You can't. That's a different person, not the people that are at issue in front of us now. That's correct, your honor. But these people are for supervisors and these people are the ones under board policy that have the duty to make those reports. And the duty is a mandatory duty. These are mandatory reporters and their board policy, policy 4240. Were any of them charged with failure to report? No, your honor. But their board policy says that anyone who has reason to, who receives a report, and if there's any doubt, you resolve it in favor of reporting. And if you don't- Where are the allegations in your complaint about them receiving these reports? So your honor, they received the reports from Principal Clower, received the reports from Jennifer Bender. Just which paragraph is that in your complaint? I'm sorry, let me look for you. So in paragraph 66 of the complaint, we allege that Ms. Bender observed Ms. Johnson's abuse of GA and reported it to Appellant Clower. The district attorney and the investigators that investigated the criminal matter reported to GA's mother that this was reported all the way up to the superintendent. And that all of the administrators knew and did not take action. And then the district attorney and the sheriff's department didn't pursue a failure to report against any of these people. To my knowledge, they did not, your honor. But that was something that at this point, without the benefit of discovery, we don't have access to that underlying investigative record. We don't have access to the information about what they knew, what exactly was reported, the things that they're putting forth. What we do know is what the police were investigating. We do know that they were investigating him being put in a trash can repeatedly and told, if you act like trash, you'll be treated like trash. We know that they were investigating him being held down and smothered with her hands and nose, with her hand over the mouth and nose. We know that she spilled hot grease on his head. We know that they were investigating whether her forcing him to stand, not giving him a desk and forcing him to stand inside of a taped square. So these are terrible facts. Terrible. I think that all of us are parents here. Maybe not the other people in the courtroom, but everybody on the bench is a parent. But the state of North Carolina has seemed fit to give immunity, a pretty broad immunity, to public officials. And you recognize that these four people are not the person that did this, but public officials. Let me just say that we grant public, we grant immunity, qualified immunity, to people that shoot, policemen that shoot somebody else because of the instance, because of the immunity. And so even though these are terrible facts, you have to grapple with the immunity. Yes, Your Honor, and I believe- Then they just, just because you have terrible facts, think of the and still the officer gets immunity. Yes, Your Honor. And we want public officials to act in good faith, right? And we want them when they're- Public officials don't get immunity only when they do the right thing. That's just, they don't need the immunity then. But they only get immunity when they exercise discretion. And Your Honor, we are not- So this is all about they didn't, they don't have discretion? I thought all your argument was when you were telling us these facts, is that they did have discretion to do this, to report it, et cetera, and they didn't do it. So what is your argument? Is your argument that they don't have any discretion? So Your Honor, according to the district court- I'm not asking, I'm asking for your position. You embrace the district court opinion. If that is some substance of what you're going to argue to us, that's fine. Because I understand what the district court said, and we can make our assessment about whether the district court was right or wrong. I thought maybe you had some other, or even alternative argument to make. We do, Your Honor. And so if Your Honors are not inclined to accept that it was ministerial, and that the duty was absolute, and that they were exercising discretion, then we have properly pled the exceptions. We have properly pled the exceptions to pierce that immunity. And what exception have you properly pled? We have properly pled malice. Where? Okay, where is the word malice in your plea? So Your Honor, we pled the facts that support malice. Where? We pled- The whole thing? No, Your Honor, not the whole thing. But we did plead that we pled all the times that they did not report. We pled that they received the information. We pled that they did not report. We pled that they had the intent to harm. Okay, where is the intent to harm? Where is that? It is pled over and over again. Okay, just give me one or two instances, just over and over. So we pled in paragraph 156 that any rational principal, EC director, associate superintendent, or superintendent would have taken immediate action to stop the abuse and to prevent future- Oh, I thought you said you pled intent to harm. So Your Honor, the intent to harm is also found to be through constructive intent. When you choose to do nothing, when you have these facts and you choose to do nothing, you choose to keep it quiet and you- So where is the word intent, constructive or otherwise? So Your Honor, in paragraph 158, we pled that she ratified that by failing to take corrective action, they ratified her conduct and allowed the continued abuse of GA and also of other- The word intent or constructive intent or malice isn't in there. It's ratified. It's ratified, Your Honor, but I think- 158 doesn't say anything about ratifying. Oh, yes, I see. Therefore ratified conduct. Okay. Your Honor, we pled in paragraph 161 that they turned a blind eye. They took no corrective action and they allowed the abuse to continue. All right, now what North Carolina cases are there that strip the immunity from school officials for a failure to report or a failure to take corrective actions? I want you to give me what North Carolina cases are there that strip the immunity from supervisory school officials for a failure to report or a failure to take corrective action? Your Honor, what I think is instructive on that is that all of the cases that afford immunity point to what the officials did. They point to the investigation that they conducted. They point to the actions that they took and they find that those were sufficient. No, no, no, no, but what I'm concerned about are sins of omission, so to speak, and where has the immunity been stripped from school officials for sins of omission? From failure to do this or failure to report or failure to take corrective action because the malice is generally associated with some active intent. And what I'm concerned about here is that you're making a leap from an active intent to harm to a failure to correct a harm. And I want to know where the North Carolina case law strips the immunity from a failure to take corrective action, which is what really it seems to me the gravamen of your complaint is. Now, you need to tell me what North Carolina case law backs you up. And so, Your Honor, there are no cases that we have been able to locate that specifically say in the school's context that the failure to report or the failure to take corrective action. But there are cases, the Chastain case that is briefed where you have the law enforcement trainer that discharges the loaded firearm. And in that case, the court found that that is constructive intent. There's no way to know. I was always taught in law school that constructive intent or constructive discharge meant no intent or no discharge. Constructive could be a fudge word when there's no active. So, but you're saying that in this, you are admitting that in the school setting, there are no North Carolina cases that have stripped the immunity from school officials, supervisory officials for a failure to take corrective action. And the reason I ask that question is the cases that are out there in the woods must be absolutely legion if you can interpret malice in the school setting to mean a failure to take corrective action. Well, there are parents and students and people all the time who think school officials are negligent for failing to take corrective action. So, I'm just asking you, aren't we, if failure to correct strips the immunity, aren't we taking a big leap under North Carolina law? So, Your Honor, we have the Smith v. Jackson case, right? And in that case, there was the failure to report to DSS. It was concealment. It was cover up. There was abuse that the SRO was aware of and did not take action. Now, again, my colleague seeks to distinguish that and says, well, it's the public duty doctrine. But the public duty doctrine serves the same purpose. And in the Smith v. Jackson case, they make it clear that this blanket immunity does not serve what the purpose of immunity is. And I do think that that's one thing that is important to come back to, is what is the purpose of immunity? The purpose of immunity, and this is something that's afforded, had they reported, had they taken any action, they have statutory good faith immunity under Dobson. Because Dobson court made clear, if you report, you have immunity. So, there's no chilling effect that's going to happen here of people not reporting abuse and thinking that, oh, well, I might get in trouble for that. We want people to think that they might get in trouble for not reporting abuse. But there are many, many instances where someone could be, didn't feel a need to report. I mean, maybe they didn't feel the incident was that serious. Maybe they didn't feel it was a credible allegation. Maybe they felt that they didn't believe it because the teacher was a very good teacher. Um, so I can see a lot of reasons why someone would fail to report in good faith and a failure to report, as opposed to active inflection of harm, a failure to report is much more likely to be discretionary. Is that not right? I would agree with that, Your Honor. But I would agree that in the face of these facts, that we pled that that was not the right decision. It was, and it was malicious to turn the blind eye to that over and over again. But you didn't plead maliciousness. We pled what the standard was, Your Honor. And we pled facts supporting the malicious behavior. What do you mean? But does the word malicious appear in your complaint? It does, Your Honor, in terms of what the standard is, the Grad-B CASA standard. The word malicious appears in your complaint. That was Judge Motz's question. Does the word malicious appear? Yes, she says it does. Yes, Your Honor. Where is it? I'll find the paragraph for you, okay? But I do think that, and while I'm looking... So when you set out the standard, the word malicious. Yes, Your Honor. But you did not make allegations that what happened here met the standard, i.e. malicious. Your Honor... I see where you're... And when I think, if you look at the cases where someone makes a conclusory statement that says they acted with malice and there's no supporting allegations, those cases are dismissed. That's not... Well, so you decided not even to put that in. So how do you evade dismissal that way? So I think we evade dismissal because we have the facts that support the malicious behavior. But you have to say that you regard or you're alleging that they acted in a malicious manner and then explain why that's malicious. That's what a complaint should be doing. Yes, Your Honor. And we alleged corruption. We alleged that they purposely sought to conceal this. I mean, we allege that at every opportunity, they failed to take an action. We allege that they put her with more disabled children. We allege that they continued to employ her even after she pleaded guilty. We allege that they lied to the parent. All of those actions constitute malicious actions. And I think it's improper to say, well, if you only put one sentence, that that's not enough. But if you have a fact-rich complaint, a malicious actions, and the intent for this to continue and for the harm to happen... Do you have intent? See, the thing is, all those actions maybe were malicious. Maybe they were just a mistake. Um, they were just, you know, that they weren't malicious at all. These people just weren't very good people, good administrators. They were careless. Careless is different than malicious. Right? And those facts don't tell us one way or the other. And we have no allegation from you that we're one way or the other. And so, Your Honor, those claims, we survived the motion to dismiss. To the extent that it's necessary to go back and to write, they acted malicious and it was their intent. And to add that to the complaint and to amend to say that, I mean, we certainly can do that. But the facts that are there... But the fact that you survived a motion to dismiss doesn't stand on appeal. You understand that, right? I do understand that, Your Honor. Right? And so, that was why our first position is that public immunity, right, public official immunity is afforded for discretionary acts, right? And mandatory reporting is not a discretionary act. Mandatory reporting says, if you know, and I think if you look at the recent decision from this court in Dove in reporting the Title IX, when you receive a report that objectively is reasonable, that it would constitute sexual harassment, or in this case, it would constitute child abuse. When you receive that report, you have a duty then at that point to take action. And here they did not do that. And did you plead that in your complaint that that was contrary to some sort of state law? Yes, Your Honor, we did. We pledged that it was contrary to state law. We pledged that it was contrary to Board of Education policy, contrary to the school board policy. And you cited all those things? We did, Your Honor. And we said... Not just said, it's contrary to... No, Your Honor. And we specifically outlined what those duties are, and that by not reporting, that it was contrary to those duties. And the duty under the board policy 4240 informs them. If you don't report, you are subject not only to discipline at school,  And so, Your Honor, I realize that I'm almost out of time. Do we know this woman, the abuser's conduct ultimately was reported? Do we know by some, as I understand it, some employee in school? Is that correct? That is correct. Okay. Do we know the timing of that? Yes, Your Honor. We know that that was reported when he was six years old, when he was in first grade. Do we know the timing of that vis-a-vis when the defendants that were at issue here knew about it? Yes, Your Honor. Once that Ms. Bender reported when he was in first grade, she informed Appellant Clower, who was here, and then Appellant Clower informed the other appellants. So if that was in first grade, Ms. Johnson continued as his teacher and continued the abuse. But it was reported to the sheriff's office. It was reported to the sheriff's office when he was in third grade. And that was when another student... And I think it's an important fact, and I realize that I'm over my time. If I could just finish. Is that when someone who was not in the district heard this very same thing, put them in a trash can, treat them like trash. They investigated, and they reported it to the police. The police investigated, and they charged her with two counts of assault on a handicapped person, and she pled guilty. Really, we understand those facts. What we are trying to do is to see if these four people are entitled to immunity under North Carolina law. And so telling us all these facts, if you don't allege... I don't think you allege malice in this complaint. And if you don't allege some other exception that would put them under North Carolina law, then they're entitled to the immunity. And I don't under... And just respectfully, if we allege that they were in conspiracy to cover this up, I think that it's also corruption. If we allege that these actions and the continued decision to put her back in these same environments with disabled children, that that is the intent that we need. And Your Honor, we would respectfully... I'll just... To close, we would respectfully ask that this court uphold the decision of the district court and find that they are not entitled to immunity at this stage. There may be evidence that comes out in discovery that shows that they are entitled to immunity, that they really didn't know, that they did investigate, that the police were lying. That could happen. But at this stage, we have facts that for two years they knew about this abuse and they did nothing. And to find otherwise undermines not only the statutory intent, but it also invites school officials to turn a blind eye to abuse and to refuse to report those that are found guilty of assaulting children and to improperly use the cloak of immunity as a sword rather than a shield. Okay. Well, this is a definition of malice. To allege that a public official acted with malice, a plaintiff must allege flat facts showing that the defendant, quote, to his duty and which he intended to be prejudicial or injurious to another. So there has to be intent. And I think you have to plead intent. And Your Honor, our position is that there is intent by doing nothing. And by ratifying the abuse, there was the intent for it to continue. Intent to injure by doing nothing. The intent to injure because they knew what she was doing and they continued. And then they put her with more vulnerable children. And even after she pleaded guilty, they kept employing her. That is an intent to continue to injure. And Your Honor, we believe that the facts in the amended complaint support that. Okay. Thank you. All right. We thank you very much. Ms. Knight, you have some rebuttal. Yes, Your Honor. Thank you very much. I will be brief. As the court has recognized, this presumption is quite burdensome for a plaintiff. They must allege facts, not mere speculation, to overcome this presumption. The presumption means that they made reasonable decisions. These are troubling facts. They're not what we want to see in our public schools. But plaintiffs cannot get discovery on mere upon information and beliefs about knowledge. This is an immunity from suit, not merely immunity from liability. The plaintiffs claim here that the appellants made a bad decision. We could have walked in here today and admitted negligence. And the public officials here would still be immune. They could have gotten it wrong. They could have made a bad call. They could have done more. This could be not the right decision. But that's simple negligence for which these public officials are immune. There are no allegations here to Pierce. Plaintiffs have not pointed to any allegations showing this intent to harm. There are no allegations of this intent to harm. There's no allegations of collusion, of collective intent here either. Though I believe that corruption has been waived as a piercing exception. Ms. Saint, how do you deal with the fact that the facts here that were are really pretty terrible? We say other on the appellant's brief. I say other elements of Ms. Johnson's physical emotional abuse included spilling hot grease on J.A. He was stuffed back into a trash can when he tried to get out. His nose and mouth were covered on multiple occasions. She made him stand for hours on end, which is in the brief claims that this was a known method of torture. Why does that not, if you didn't use the magic word, but why does not that kind of treatment indicate malice? Your Honor, it may indicate malice on Ms. Johnson's part, but she's not an appellant. Here, what was allegedly known by these defendants, again upon information and belief, was something that happened in the 2017-2018 school year. That could have been an incident of restraint. That could have been an incident of being in the trash can that wasn't standing at a desk or without a desk or the collard greens incident. That was the following year. There are no allegations that any of these appellants, that that was reported to any of them. But again... I'm sorry. So say that again. The only thing that they knew was... I'm sorry, Your Honor. The first trash can incident. Is that it? We're not entirely sure what they knew. Well, what is alleged in the complaint? Well, what was alleged is that they knew about the abuse. And we don't know what the abuse means. That's a legal conclusion. We don't know what the facts are that were reported allegedly upon information and belief between Bender to Kluwer to the other three. I thought you just said that they didn't know about the second. That's right, Your Honor. So the allegation... How do you get that if the complaint says the abuse? The allegation of the report occurred in the 2017-2018 school year. In the 2018-2019 school year is when the allegations about the standing or not having a desk. That happened the following school year. There are no allegations of any reporting the following school year. All right. So I gather what you're saying here is that if the teacher, Ms. Johnson or whoever was the defendant here, that this would be a very different case. But because the case is brought against school officials, it moves it from an active intent to harm to a failure to report case. So is the linchpin of your position that if the teacher had these allegations, if the teacher were an active defendant here, that this would be sufficient to plead malice but when it goes up to the supervisory stage, it becomes a failure to take corrective action case. And your view is that's not sufficient to plead malice. It all depends on who the defendant is. Yes, Your Honor. I see him over time. If I can answer your question, I think it's very important about who the defendant here is here. The teacher is to liken the police shooting case that Judge Motz brought up is like the police officer who did the shooting. But in those cases, the police officer is an official. A teacher is an employee. A teacher doesn't have public official immunity whatsoever. There doesn't need to be an analysis of whether her actions were malicious or not. What is required is an analysis of these school officials' actions as being malicious. And there are just simply no allegations that they did it with an intent to harm the student. It was a failure to take corrective action case. Yes, Your Honor. It is a failure to take corrective action case based on... We're not sure what the knowledge was of these school officials. But in any event, the argument is that they should have done more. And should have done more is a negligence question, not a malicious question. And so there are simply no allegations of this intent. And the court should find that these school officials have public official immunity, reverse the district court, and allow the case to proceed against the teacher and the remaining defendants. Well, of course, the problem is it's here in 12B6 motion, right? That is correct, Your Honor. So they haven't had an opportunity to talk to these people, to find out what the intent was and when they did do these things. That is partially correct, Your Honor. There are ways in the public school environment and in the public environment, generally, to request records to get information. There's the Family Educational Rights and Privacy Act. There's the FOIA Act where they could have gotten information. Did they do that? Not that I'm... I don't know, Your Honor. I don't know whether they did that or not. Your client would know that. I'm sorry? Your clients would know that. My clients, most of them no longer work for the district anymore.  I have represented state agencies too. But there's somebody that you're talking to as a client. Yes, Your Honor. And I don't know that fact to give you, Your Honor, if they did or did not request records. But they could have. And what is required is that they allege the intent. They must have done their due diligence because of this presumption. The presumption is so high here for public official immunity that the allegations have to be made at the 12B6 stage, not only at the summary judgment stage, because this is an immunity from suit. You don't get straight to discovery simply because you allege upon information and belief because you think you need more information. You have to have enough information to allege malice in your complaint in order to get over the presumption. That is the whole purpose of public official immunity and the other immunities from suit. The court has no... Thank you. Excuse me, counsel. If there are no further questions, I want to thank you and both of you for an interesting and spirited appellate argument. And as I mentioned to previous counsel, we're sorry we can't, but the state of the virus prohibits us from coming down and expressing our appreciation to you personally. But our gratitude to you is no less. So thank you so much.
judges: J. Harvie Wilkinson III, Diana Gribbon Motz, Stephanie D. Thacker